UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |  |
|---|---|---|
| JIANGSU ZHONGJI LAMINATION MATERIALS CO., LTD. (F/K/A JIANGSU ZHONGJI LAMINATION MATERIALS STOCK CO., LTD.), JIANGSU ZHONGJI LAMINATION MATERIALS CO., (HK) LTD., SHANTOU WANSHUN PACKAGE MATERIAL STOCK CO., LTD., JIANGSU HUAFENG ALUMINIUM INDUSTRY CO., LTD. AND ANHUI MAXIMUM ALUMINIUM INDUSTRIES COMPANY LIMITED, | ) ) ) ) ) ) ) ) ) ) ) | |
|  | ) | Ct. No. 21-00133 |
| **Plaintiffs,** | ) ) ) | |
| v. | ) ) | |
| **UNITED STATES,** | ) ) ) | |
| **Defendant.** | ) ) ) | |

## COMPLAINT

Plaintiffs Jiangsu Zhongji Lamination Materials Co., Ltd. (F/K/A Jiangsu Zhongji Lamination Materials Stock Co., Ltd.), Jiangsu Zhongji Lamination Materials Co., (HK) Ltd., Shantou Wanshun Package Material Stock Co., Ltd., Jiangsu Huafeng Aluminium Industry Co., Ltd. and Anhui Maximum Aluminium Industries Company Limited, producers and exporters of the subject merchandise (collectively, "Jiangsu Zhongji"), by and through their counsel, allege as follows:

### I.     PROCEEDING UNDER REVIEW

1.     This action seeks judicial review of certain aspects of the final results of the first administrative review of the countervailing duty order on certain aluminum foil from the People's Republic of China conducted by the U.S. Department of Commerce ("Commerce"). See Certain Aluminum Foil From the People's Republic of China: Final Results of Countervailing Duty

1

Administrative Review; 2017-2018, 86 Fed. Reg. 12,171 (Dep't Commerce Mar. 2, 2021) ("Final Results"), and accompanying Dec. Mem. ("Final Dec. Mem."). The review in question covers entries of certain aluminum foil during the period of August 14, 2017 through December 31, 2018.

## II. JURISDICTION AND STANDARD OF REVIEW

2. Plaintiffs bring this action pursuant to the Tariff Act of 1930, as amended (the "Act"), sections 516A(a)(2)(A)(i)(I) and 516A(a)(2)(B)(iii), 19 U.S.C. § 1516a(a)(2)(A)(i)(I); (a)(2)(B)(iii).

3. This Court has jurisdiction pursuant to 28 U.S.C. § 1581(c) and section 516A(a)(2)(A)(i)(I), (B)(iii) of the Act, 19 U.S.C. § 1516a(a)(2)(A)(i)(I), (B)(iii).

4. The standard of review, as set forth in section 516A(b)(1)(B)(i) of the Act, 19 U.S.C. § 1516a(b)(1)(B)(i), is whether the determinations, findings or conclusions of Commerce were "unsupported by substantial evidence on the record, or otherwise not in accordance with law."

## III. STANDING

5. Plaintiffs Jiangsu Zhongji Lamination Materials Co., Ltd. and Jiangsu Zhongji Lamination Materials Co., (HK) Ltd. are a foreign producer and exporter, respectively, of the subject merchandise. Commerce selected Jiangsu Zhongji Lamination Materials Co., Ltd. as a mandatory respondent during the countervailing duty administrative review. The additional Plaintiffs are cross-owned companies with foreign producer Jiangsu Zhongji Lamination Materials Co., Ltd. and, thus, were subject to the Commerce's administrative review. All Plaintiffs are, therefore, "interested parties" within the meaning of sections 771(9)(A) and 516A(f)(3) of the Act, 19 U.S.C. § 1677(9)(A) and 1516a(f)(3).

6. Accordingly, Plaintiffs have standing to commence this action pursuant to 28 U.S.C. § 2631(c).

## IV. TIMELINESS OF THIS ACTION

7. On March 2, 2021, Commerce published the final results in the Federal Register.

8. Plaintiffs filed a summons to initiate this case on March 24, 2021, within 30 days of the publication in the Federal Register of the final results. This complaint is being filed within 30 days after the date on which the summons was filed.

9. Thus, Plaintiffs' summons and complaint are timely filed pursuant to 19 U.S.C. § 1516a(a)(2)(A)(i)(I); (a)(2)(B)(iii) and USCIT R. 3(a)(2), 6(a).

## V. STATEMENT OF FACTS

10. Commerce initiated the countervailing duty investigation of certain aluminum foil from the People's Republic of China on March 30, 2017, following the filing of the petition on March 9, 2017. See Certain Aluminum Foil From the People's Republic of China: Initiation of Countervailing Duty Investigation, 82 Fed. Reg. 15,688 (Dep't Commerce Mar. 30, 2017). The International Trade Commission (the "Commission") simultaneously conducted its investigation. See Aluminum Foil From China; Institution of Antidumping and Countervailing Duty Investigations and Scheduling of Preliminary Phase Investigations, 82 Fed. Reg. 13,853 (USITC Mar. 15, 2017).

11. On April 19, 2018, Commerce issued a countervailing duty order on certain aluminum foil from the People's Republic of China following an affirmative countervailing duty determination and an affirmative injury determination by the Commission. See Certain Aluminum Foil From the People's Republic of China: Amended Final Affirmative Countervailing Duty

Determination and Countervailing Duty Order, 83 Fed. Reg. 17,360 (Dep't Commerce Apr. 19, 2018).

12. Between April 19, 2019 and April 30, 2019, interested parties requested that Commerce conduct an administrative review of the countervailing duty order on certain aluminum foil from the People's Republic of China. On June 13, 2019, Commerce initiated the first administrative review covering the period August 14, 2017 through December 31, 2018. See Initiation of Antidumping and Countervailing Duty Administrative Reviews, 84 Fed. Reg. 27,587, 27,595 (Dep't Commerce June 13, 2019).

13. On July 31, 2019, Commerce selected two mandatory respondents: (1) Jiangsu Zhongji Lamination Materials Co., Ltd. and (2) Xiamen Xiashun Aluminum Foil Co., Ltd. See Certain Aluminum Foil From the People's Republic of China: Preliminary Results of the Countervailing Duty Administrative Review and Rescission the Review, in Part; 2017-2018, 85 Fed. Reg. 38,861 (Dep't Commerce June 29, 2020) ("Prelim. Results"), and accompanying and Dec. Mem. at 3 ("Prelim. Dec. Mem.").

14. Between August 22, 2019 and May 7, 2020, Jiangsu Zhongji timely submitted answers to Commerce's questionnaires and supplemental questionnaires. See Prelim. Dec. Mem. at 3-4, n.19, 22-23.

15. On November 6, 2019, Commerce initiated an investigation into a new subsidy allegation ("NSA") following the request submitted by The Aluminum Association Trade Enforcement Working Group ("the petitioners") to initiate an investigation of the Government of China's ("GOC") provision of aluminum plate, sheet and strip input used to produce aluminum foil. See id. at 3, n. 20-21.

16. On April 1, 2020, Jiangsu Zhongji timely submitted benchmark data. See id. at 5, n. 23. To calculate aluminum sheet/plate benchmark, Jiangsu Zhongji proposed that Commerce use both the Global Trade Atlas ("GTA") Global Exports and the Commodities Research Unit ("CRU") report to calculate the aluminum sheet/plate benchmark because these sources represented the input used by Jiangsu Zhongji. See Final Dec. Mem. at 20. Regarding the primary aluminum benchmark, Jiangsu Zhongji proposed that Commerce use the London Metal Exchange ("LME") data provided by Jiangsu Zhongji, because these data are more representative of the type of primary aluminum it used to produce aluminum foil. See id. at 24. Finally, regarding land benchmark, Jiangsu Zhongji proposed that Commerce use the updated 2016-2018 Asian Marketview reports by CB Richard Ellis ("CBRE"), a tier-two source. See id. at 30. Alternatively, Jiangsu Zhongji proposed that Commerce use the 2018 Nexus reports if Commerce continues to rely on a tier-three benchmark. See id.

17. On April 13, 2020, Jiangsu Zhongji submitted information to rebut or clarify benchmark information submitted by the petitioners. See Prelim. Dec. Mem. at 5, n. 23.

18. On April 24, 2020, Commerce tolled all deadlines in administrative reviews by fifty days, thereby further extending the deadline for the preliminary results until June 18, 2020. Id. at 5, n. 25.

19. Due to Commerce's tolling decision, the period to submit benchmark information was re-opened. On May 18, 2020, Jiangsu Zhongji timely submitted additional benchmark data. See Final Dec. Mem. at 23. On May 22, 2020, Commerce, however, rejected the document arguing that the 10-day deadline to rebut, clarify or correct factual information had passed, and Jiangsu Zhongji's May 18 submission was filed beyond the deadline to submit rebuttal comments. See id. at n. 109.

20. On May 26, 2020, Jiangsu Zhongji submitted a request for reconsideration of Commerce's May 22 letter. See Letter on Behalf of Jiangsu Zhongji to Commerce re: Objection to Commerce's Rejection of Additional Benchmark Submission and Request for Reconsideration (May 26, 2020) (Public Document). Jiangsu Zhongji clarified that its May 18 submission was in fact additional benchmark information that complemented its original benchmark submission from April 1, 2020, instead of rebuttal benchmark comments.

21. On June 2, 2020, Commerce confirmed its decision to reject Jiangsu Zhongji's May 18 submission, but this time Commerce based its rejection on different reasons. In its June 2 letter, Commerce stated that the 30-day deadline to file benchmark comments had passed prior to the issuance of the tolling memorandum, and, therefore, Jiangsu Zhongji's May 18 submission was untimely filed. See Letter from Commerce to Jiangsu Zhongji re: Countervailing Duty Administrative Review of Aluminum Foil from the People's Republic of China at 2 (June 2, 2020) (Public Document).

22. On June 29, 2020, Commerce published its preliminary results, and asked the parties "to provide information to rebut, clarify, or correct information in the Land Benchmark Analysis or the Land Benchmark Memorandum." Prelim. Dec. Mem. at 17-18.

23. On July 17, 2020, Jiangsu Zhongji timely submitted land information to rebut, clarify, or correct information on the record. Commerce, however, found Jiangsu Zhongji's July 17 submission to be new factual information, and therefore, rejected the document. See Final Dec. Mem. at 33.

24. On August 10, 2020, Jiangsu Zhongji submitted a case brief for Commerce's consideration prior to issuing the final results. See id. at 2, n. 5. In their case brief, Jiangsu Zhongji

made various arguments on the calculation of benchmarks for land, primary aluminum and aluminum sheet/plate.

25. On March 2, 2021, Commerce published the final results. Commerce calculated a countervailing duty subsidy rate for 2017 of 45.22 percent and for 2018 of 48.36 for Jiangsu Zhongji. See Final Results, 86 Fed. Reg. at 12,172.

26. In the Final Results, Commerce made certain determinations regarding the nature and calculation of the benefit received by Jiangsu Zhongji through less than adequate remuneration ("LTAR") programs on aluminum sheet/plate, primary aluminum and land.

27. In the Final Results, Commerce relied on the Trade Data Monitor ("TDM") data covering Harmonized Tariff Schedule ("HTS") classification 7606.12 to construct the monthly benchmark measuring the benefit received from the aluminum sheet/plate for LTAR program. See Final Dec. Mem. at 24. According to Commerce, the TDM data better capture the different aluminum plate or sheet input products purchased Jiangsu Zhongji. See id.

28. Commerce declined to use the proposed benchmark information submitted by Jiangsu Zhongji to calculate the benchmark price for aluminum sheet/plate because, in Commerce's words, "record evidence does not demonstrate that {Jiangsu} Zhongji's purchases are more comparable to 1050 alloy than the TDM data covering HTS subheading 7606.12." Id. at 22. In addition, Commerce stated that in its NSA questionnaire response, the GOC explained that Jiangsu Zhongji purchased aluminum sheet/plate under a variety of HTS subheadings including 7606.1220, 7606.1230, 7606.1259 and 7606/1290. See id. at 21. Commerce also stated that Jiangsu Zhongji did not purchase aluminum rolled products with 1050 alloy. See id. Finally, regarding Jiangsu Zhongji's alternative request that Commerce use TDM data from the countries that produce and export aluminum sheet/plate, Commerce explained that "the only information on

the record concerning countries that produce and export aluminum foil stock similar to the type used in {Jiangsu} Zhongji's production of subject merchandise is contained in an affidavit," and nothing else substantiates the claims or analyzes the specific types of aluminum foil produced and exported by the countries in the TDM data, CRU report or GTA data. Id. at 24.

29.     In the Final Results, Commerce declined to use LME data to construct the benchmark to measure the benefit received from the primary aluminum for LTAR program, because the LME "contains only a cash price for primary aluminum (*i.e.*, unalloyed ingots) with a minimum aluminum content of 99.7%." Id. at 26. According to Commerce, there is no evidence on the record that demonstrates that Jiangsu Zhongji used only primary aluminum with a minimum aluminum content of 99.7%. See id. Regarding Jiangsu Zhongji's alternative proposal to use only GTA and Comtrade data for HTS 7601.10, Commerce stated that there is no evidence that Jiangsu Zhongji "only purchased primary aluminum under HTS 7601.10 and not HTS 7601.20." Id. Commerce instead relied on the weighted average of the GTA and Comtrade pricing data covering HTS subheadings 7601.10 and 7601.20 to value primary aluminum. See id.

30.     In the Final Results, Commerce continued to rely on the 2010 CBRE report data to value land-use right in China. See id. at 33. Commerce declined to use the benchmarks proposed by Jiangsu Zhongji. Regarding 2016-2018 CBRE reports, Commerce cited the LWS from China case to explain that "Chinese land prices are distorted by the significant government role in the market, and hence, no usable tier one benchmark exists." Id. at 31 (citation omitted). In addition, Commerce explained that because "land is generally not simultaneously available to an in-country purchaser while located and sold out-of-country on the world market," they cannot use tier-two benchmarks. Id. (citation omitted). Regarding the use of CBRE reports for Mexico and Brazil as tier-three benchmarks, Commerce explained that, "unlike Thailand, Mexico and Brazil are oceans

apart from {China}," and Jiangsu Zhongji did not provide information to prove that these countries are more economically comparable to China than Thailand. Id. at 32. Finally, regarding the use of the 2018 Nexus report as alternative tier-three benchmark data, Commerce stated that Jiangsu Zhongji did not provide explanation of the methodology used to collect the data. See id. at 33. Moreover, according to Commerce, the 2010 CBRE data correspond more closely to the years in which Jiangsu Zhongji purchased land-use rights than do the Nexus report data from 2018. See id.

## VI. STATEMENT OF THE CLAIMS

### COUNT I

31. Plaintiffs herein incorporate by reference paragraphs 1 through 30, supra, of this complaint.

32. Commerce's calculation of the benchmark for the aluminum sheet/plate for LTAR program using the TDM data covering HTS subheading 7606.12, despite evidence that the spectrum of goods captured in the TDM data is overbroad, is not based on substantial evidence and is otherwise not in accordance with law.

### COUNT II

33. Plaintiffs herein incorporate by reference paragraphs 1 through 32, supra, of this complaint.

34. Commerce's calculation of the benchmark for the primary aluminum for LTAR program using the average of GTA and Comtrade pricing data covering HTS subheadings 7601.10 and 7601.20, despite evidence that using HTS subheadings 7601.10 and 7601.20 would result in the inclusion of a massive number of other products not used to produce aluminum foil, is not based on substantial evidence and is otherwise not in accordance with law.

**COUNT III**

35. Plaintiffs herein incorporate by reference paragraphs 1 through 34, supra, of this complaint.

36. Commerce's calculation of the benchmark for the land for LTAR program using the 2010 CBRE report data, despite evidence that the 2010 CBRE report is outdated and the record included an updated CBRE report and tier-three benchmark information, is not based on substantial evidence and is otherwise not in accordance with law.

**COUNT IV**

37. Plaintiffs herein incorporate by reference paragraphs 1 through 36, supra, of this complaint.

38. Commerce's decision to reject from the administrative record the additional benchmark information submitted by Jiangsu Zhongji, when the period to submit benchmark information was opened again due to Commerce's tolling of the preliminary results, is not based on substantial evidence and is otherwise not in accordance with law.

**COUNT V**

39. Plaintiffs herein incorporate by reference paragraphs 1 through 38, supra, of this complaint.

40. Commerce's rejection of the land information to rebut, clarify, or correct information on the record submitted by Jiangsu Zhongji in response to the request made by Commerce, despite the express request in the preliminary results to provide information to rebut, clarify, or correct information in the Land Benchmark Analysis or the Land Benchmark Memorandum, is not based on substantial evidence and is otherwise not in accordance with law.

## DEMAND FOR JUDGMENT AND PRAYER FOR RELIEF

WHEREFORE, and as challenged herein, Jiangsu Zhongji respectfully prays that this Court:

(1) find that Commerce's actions as described in Counts I-V were unsupported by substantial evidence and otherwise not in accordance with law;

(2) order Commerce to recalculate the countervailing duty subsidy rate assigned to Jiangsu Zhongji in the administrative review by correcting the errors set forth in Counts I-V;

(3) order Commerce to publish amended final results in the Federal Register in accordance with a final decision by this Court in this matter;

(4) order Commerce to issue liquidation instructions to U.S. Customs and Border Protection consistent with this Court's decision; and

(5) provide such other relief as this honorable Court deems proper.

Respectfully submitted,

/s/ Jeffrey S. Grimson
Jeffrey S. Grimson
Kristin H. Mowry
Jill A. Cramer
Sarah M. Wyss
Bryan P. Cenko
Wenhui "Flora" Ji
Yixin Li (Cleo)
Mowry & Grimson, PLLC
5335 Wisconsin Avenue NW, Suite 810
Washington, DC 20015
202-688-3610 (phone)
trade@mowrygrimson.com
*Counsel to Plaintiffs*

Date: April 2, 2021