NONCONFIDENTIAL

## UNITED STATES COURT OF INTERNATIONAL TRADE

**BEFORE:  THE HONORABLE TIMOTHY M. REIF, JUDGE**

| | |
|---|---|
| JIANGSU ZHONGJI LAMINATION MATERIALS CO., LTD., <u>ET</u> <u>AL.</u>,<br><br>        Plaintiffs,<br><br>    v.<br><br>UNITED STATES,<br><br>        Defendant,<br><br>    and<br><br>ALUMINUM ASSOCIATION TRADE ENFORCEMENT WORKING GROUP, <u>ET</u> <u>AL.</u>,<br><br>        Defendant Intervenors. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)  Court No.  21-00133<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## DEFENDANT INTERVENORS' COMMENTS IN SUPPORT OF REMAND REDETERMINATION

JOHN M. HERRMANN
GRACE W. KIM
KELLEY DRYE & WARREN LLP
3050 K Street, N.W., Suite 400
Washington, DC  20007
(202) 342-8400

**Counsel to Defendant-Intervenors**

**October 31, 2023**

NONCONFIDENTIAL

## Table of Contents

**Page**

TABLE OF AUTHORITIES ..........................................................................................ii-iii

I.  THE DEPARTMENT'S SELECTION OF THE TRADE DATA MONITOR ("TDM") DATA COVERING HTS SUBHEADING 7606.12 FOR THE ALUMINUM SHEET AND PLATE BENCHMARK IS SUPPORTED BY SUBSTANTIAL EVIDENCE .............................................................................................2

II.  COMMERCE'S INCLUSION OF THE 2010 CBRE REPORT FOR THE LAND BENCHMARK CALCULATION IS SUPPORTED BY SUBSTANTIAL EVIDENCE......................................................................................................................8

III.  CONCLUSION.......................................................................................................12

NONCONFIDENTIAL

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

### Cases

<u>Borusan Mannesmann Boru Sanayi ve Ticaret A.S. v. United States</u>,
   61 F. Supp. 3d 1306 (Ct. Int'l Trade 2015) ...................................................................6

<u>Jiangsu Zhongji Lamination Materials Co. v. United States</u>,
   Slip. Op. 23-41 (Ct. Int'l Trade Mar. 21, 2023) ("<u>Remand Order</u>")
   (ECF No. 59).............................................................................................................1, 8, 9

<u>Goodluck India Ltd. v. United States</u>,
   11 F.4th 1335 (Fed. Cir. 2021) ....................................................................................6

<u>Risen Energy Co. v. United States</u>,
   570 F. Supp. 3d 1369 (Ct. Int'l Trade 2022) ...............................................................7

<u>Zhaoqing New Zhongya Aluminum Co. v. United States</u>,
   961 F. Supp. 2d 1346 (Ct. Int'l Trade 2014) ...............................................................8

### Statutes and Regulations

19 C.F.R. 351.524(d)(3).............................................................................................. 8-9

### Administrative Determinations

<u>Certain Aluminum Foil from the People's Republic of China:</u>
   <u>Final Results of the Countervailing Duty Administrative Review; 2017-2018</u>,
   86 Fed. Reg. 12,171 (Dep't Commerce Mar. 2, 2021) ("Final Results") and
   accompanying Issues and Decision Memorandum ..................................................2

<u>Circular Welded Carbon Steel Pipes and Tubes From Turkey:</u>
   <u>Final Results of Countervailing Duty Administrative Review; Calendar Year</u>
   <u>2012 and Rescission of Countervailing Duty Administrative Review, in Part</u>,
   79 Fed. Reg. 51,140 (Dep't Commerce Aug. 27, 2014),
   and accompanying IDM ...........................................................................................7

<u>Final Results of Redetermination Pursuant to Court Remand</u> (Aug. 4, 2023),
   ECF Nos. 67-68 ("Remand Redetermination") (REM C.R. 4, REM P.R. 6) .................. *passim*

**NONCONFIDENTIAL**

Laminated Woven Sacks from the People's Republic of China:
Final Affirmative Countervailing Duty Determination and Final Affirmative
Determination, in Part, of Critical Circumstances, 73 Fed. Reg. 35,639
(Dep't Commerce June 24, 2008) and accompanying IDM ...............................................9, 11

NONCONFIDENTIAL

## DEFENDANT-INTERVENORS' COMMENTS
## IN SUPPORT OF REMAND REDETERMINATION

On behalf of the Aluminum Association Trade Enforcement Working Group and its individual members (JW Aluminum Company, Novelis Corporation, and Reynolds Consumer Products, LLC) (collectively, "Defendant-Intervenors"), we submit the following comments in support of the remand redetermination issued by the U.S. Department of Commerce ("the Department") in this action. See Final Results of Redetermination Pursuant to Court Remand (Aug. 4, 2023), ECF Nos. 67-68 (hereinafter, "Remand Redetermination") (REM C.R. 4, REM P.R. 6).[1] These comments also respond to comments filed by Plaintiffs Jiangsu Zhongji Lamination Materials Co., Ltd. (f/k/a Jiangsu Zhongji Lamination Materials Stock Co., Ltd.), Jiangsu Zhongji Lamination Materials Co., (HK) Ltd., Shantou Wanshun Package Material Stock Co., Ltd., Jiangsu Huafeng Aluminium Industry Co., Ltd., and Anhui Maximum Aluminium Industries Company Limited (collectively, "Zhongji") and are timely submitted pursuant to the Court's Order dated October 19, 2023 (ECF No. 77). See Plaintiffs' Objection to Remand Results (Sept. 18, 2023) (hereinafter, "Plaintiffs' Remand Comments") (Public Version) (ECF No. 75). The Department's remand findings were issued pursuant to the U.S. Court of International Trade's ("Court") opinion and order in Jiangsu Zhongji Lamination Materials Co. v. United States, Slip. Op. 23-41 (Ct. Int'l Trade Mar. 21, 2023) (Public Version) (hereinafter, "Remand Order") (ECF No. 59).

For the reasons discussed below, Plaintiffs contentions are without merit, and this Court should affirm the Department's Remand Redetermination in its entirety.

---

[1]   Documents in the administrative record are cited by their confidential and/or public record number (i.e., "(C.R. __)" and "(P.R. __)") or the remand administrative record (i.e., "(REM C.R. __)" and ("REM P.R. __)") provided in the Index to the Administrative Record and Index to the Amended Remand Record filed with the Court on May 12, 2021 (ECF No. 23) and August 23, 2023 (ECF No. 72), respectively.

NONCONFIDENTIAL

**I.   THE DEPARTMENT'S SELECTION OF THE TRADE DATA MONITOR ("TDM") DATA COVERING HTS SUBHEADING 7606.12 FOR THE ALUMINUM SHEET AND PLATE BENCHMARK IS SUPPORTED BY SUBSTANTIAL EVIDENCE**

Zhongji objects to the Department's continued reliance on the TDM data covering merchandise classified under Harmonized Tariff Schedule ("HTS") subheading 7606.12 (the provision for alloyed aluminum sheet and plate) for the aluminum sheet and plate benchmark, rather than the Commodities Research Unit ("CRU") data submitted to the Commerce Department by Zhongji covering certain prices for grade 1050 alloy aluminum sheets.  See Plaintiffs' Remand Comments at 3-12.  Specifically, Zhongji claims that the Department (1) failed to explain adequately its finding that the TDM data correspond more closely to Zhongji's purchases than the CRU data; (2) wrongly claimed that the CRU data are not tier-two benchmark prices; and (3) failed to explain its rejection of the CRU data based on the calculation of the 1050 alloy sheets in the report.  Each of these arguments is without merit and should be rejected.

The Department compared and weighed the relative strengths and weaknesses of the various benchmarking options and properly concluded that the TDM data are "superior" and the best available benchmark on the record, as "they better capture and reflect the Zhongji Respondents' (and Xiashun's) input purchases."  Remand Redetermination at 9, 13, 20 and 33. Indeed, the record demonstrates that the subject merchandise covers a variety of alloyed aluminum foil that may be manufactured using an array of alloyed aluminum sheet/plate.[2] Further, as noted in the Remand Redetermination, the Government of China ("GOC") explained

---

[2]   Compare Certain Aluminum Foil from the People's Republic of China: Final Results of the Countervailing Duty Administrative Review; 2017-2018, 86 Fed. Reg. 12,171 (Dep't Commerce Mar. 2, 2021) ("Final Results") and accompanying Issues and Decision Memorandum at 3 ("Final Results IDM") ("Aluminum foil is made from an aluminum alloy that contains more than 92 percent aluminum.")  (P.R. 390) with Zhongji Benchmark Submission at Exh. 9 (C.R. 205-209, 215-217; P.R. 311-314) ("International Alloy Designations and Chemical Composition Limits for Wrought Aluminum and Aluminum Alloys" that demonstrate the numerous designations for alloy composition accepted in the aluminum industry internationally.).

NONCONFIDENTIAL

in its response to the new subsidy allegation questionnaire that both Zhongji and Xiashun purchased aluminum sheet under a variety of Chinese Harmonized Schedule subheadings, including 7606.1220, 7606.1230, 7606.1259 and 7606.1290. Id. at 7. Thus, the Department found that HTS subheading 7606.12 covers "all of the specifications of aluminum that the Zhongji Respondents (and Xiashun) purchased," which was confirmed not only by GOC but by both respondents as well. Id. at 8-9, 13, 17. The GOC and the respondents therefore agree that HTS subheading 7606.12 is the appropriate commodity classification for the input at issue.

In contrast, and as explained by the Department, there are significant flaws with the CRU data proposed by Zhongji that make it unreliable in representing the aluminum input used by Zhongji. First, the CRU data provide only pricing data for grade 1050 alloy aluminum rolled products, which Zhongji (and Xiashun) did not purchase during the period of review. Id. at 14. Second, the benchmark data proposed by Zhongji are not actual prices or average unit values ("AUVs"), but rather are merely estimates based on an extrapolation of the [                    ] pricing data (from [                                        ] provided in the CRU Report and in part on worldwide export AUVs for merchandise classified under HTS subheading 7606.12. Id. at 9-10. The Department properly found that these price estimates are not representative of world market prices, as required by the Department's benchmark hierarchy. Id. at 13. As a result, the TDM data are the only benchmarks on the record that cover the range of products that Zhongji (and Xiashun) actually purchased. Moreover, as the Department found, the TDM data provide "world market export quantities and total values from which average unit values ("AUV") may be derived," and are the only usable tier-two world market prices available on the record. Id. at 9, 13 and 33.

Zhongji's claims that the TDM data are "overbroad" and that its purchases are more comparable to grade 1050 alloy than to the aluminum sheet products represented in the TDM data covering HTS subheading 7606.12 are unfounded. See Plaintiffs' Remand Comments at 2, 4. Neither the third-party expert declaration nor the U.S. International Trade Commission ("ITC") report on the aluminum industry that Zhongji provided demonstrates that most of the aluminum products classified under HTS subheading 7606.12 are not suitable for foil production. Id. at 4-5. The declaration offers [

                                       ] See Zhongji Benchmark Submission at Exh. 11 (C.R. 205-209, 215-217; P.R. 311-314). The Department did not conclude the expert declaration is non-authoritative as Zhongji claims, but simply recognized that it was not "more authoritative" on the matter than either Zhongji or petitioners. See Remand Redetermination at 39-40. More importantly, the Department found that the expert declaration did not specify "how much of world exports under HS subheading 7606.12 are represented by foil stock aluminum sheet of the kind that Zhongji Respondents used, or of 1050 aluminum alloy rolled products, or how much of these export volumes are made up of the types of sheet and plate which are unsuitable for use as foil stock." Remand Redetermination at 11, 40. None of the statements in the expert declaration are supported by any specific record evidence. See id. at 40. As a result, the Department properly determined that the expert declaration provided by Zhongji "does not demonstrate that grade 1050 aluminum alloy rolled products better represent the products that the Zhongji Respondents purchased than the TDM HS subheading 7606.12 export data." Id.

Moreover, the Department also found that the ITC report did not demonstrate that grade 1050 aluminum alloy rolled products better represent the products purchased by Zhongji than the TDM data, because the ITC report referenced by Zhongji does not specify the relative

NONCONFIDENTIAL

proportions of the identified applications nor their proportions relative to the overall uses of aluminum plate and sheet. See id. at 12. Notably, the Department found that the purpose of the statement referenced by Zhongji from the ITC report "is not to distinguish between the relative volumes of different commercial grades of aluminum sheet exported from the around the world, but merely to list examples of applications of aluminum plate and sheet." Id. Thus, the Department properly dismissed both the expert declaration and the ITC report, as neither document demonstrates that HTS subheading 7606.12 predominantly consists of merchandise that is not suitable for foil production, rendering a narrow, product-specific price superior to a more robust pricing series that includes all inputs used in production of the subject merchandise.

In addition, the Department also adequately explained its conclusion that there was a "wider variation between" grade 1050 alloy and the products purchased by Zhongji with respect to the chemical composition of other elements included in one or the other products. In particular, as the Department stated, Zhongji purchased [

] while Xiashun purchased [

] See id. at 14. As shown below, and as explained in the Remand Redetermination, [

] See Zhongji's Benchmark Submission at Exh. 9 (P.R. 311); Remand Redetermination at 14 and 35. [

] See Remand Redetermination at 35.

[

NONCONFIDENTIAL

]

Moreover, as the Department noted, [

] Id. at 35.  Although Defendant-Intevenors pointed out

that the [

] the Department concluded that

"it is apparent that the differences in aluminum content alone demonstrate that the 1050 products

are at best only a vague approximation for the [                    ] sheet products which

Zhongji purchased ([                                        ]), and in fact

are actually better described as a mis-match in terms of the chemical content of [        ] the

product designations Zhongji actually purchased." Id. at 35.

In essence, Zhongji's challenges to the Department's remand results amount to the

reweighing of the record evidence, which the Court is not permitted to do.  See Borusan

Mannesmann Boru Sanayi ve Ticaret A.S. v. United States, 61 F. Supp. 3d 1306, 1322 (Ct. Int'l

Trade 2015) (stating that "'{t}he substantiality of evidence must take into account whatever in

the record fairly detracts from its weight,' but on review a 'court may {not} displace the

{agency's} choice between two conflicting views, even though the court would justifiably have

made a different choice had the matter been before it de novo.'") (bracketed material in

quotation) (quoting Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951)).  Further, the

Court "'must affirm {Commerce's} determination if it is reasonable and supported by the record as a whole, even if some evidence detracts from {Commerce's} conclusion.'" <u>Goodluck India Ltd. v. United States</u>, 11 F.4th 1335, 1344 (Fed. Cir. 2021) (bracketed material in original).  In this case, the Department considered all of the evidence raised by Zhongji and did not find the evidence compelling – a decision that should be affirmed by this Court.

Next, Zhongji's argument that the Department wrongly found that the CRU data are not tier-two benchmark prices is also not compelling.  As Zhongji acknowledges, the CRU data cover prices for grade 1050 and covers [          ] different countries that are lower than the average value for aluminum sheet/plate used to produce the subject merchandise.  <u>See</u> Plaintiffs' Remand Comments at 10.  Given the limitations of this cherry-picked data, the CRU data do not constitute tier-two (world market) prices.  <u>See</u> <u>Remand Redetermination</u> at 38.  While Plaintiffs claim that the Department has frequently used data short of global coverage as tier two world market price benchmarks in the past, the <u>Risen Energy Co. v. United States</u> case cited by Zhongji involved data that were more robust than the CRU data.  <u>See</u> Plaintiffs' Remand Comments at 10.  For example, in that case, the Court sustained the Department's use of Xeneta data covering ocean freight data for various points across the world to Shanghai, China, including eight countries.  <u>See</u> <u>Risen Energy Co. v. United States</u>, 570 F. Supp. 3d 1369, 1377-79 (Ct. Int'l Trade 2022) (hereinafter, "<u>Risen Energy</u>").  Meanwhile, Zhongji's reliance on <u>Circular Welded Carbon Steel Pipes and Tubes From Turkey</u> is entirely misplaced, as that case does not address any benchmark issue at all.  <u>See</u> <u>Circular Welded Carbon Steel Pipes and Tubes From Turkey: Final Results of Countervailing Duty Administrative Review; Calendar Year 2012 and Rescission of Countervailing Duty Administrative Review, in Part</u>, 79 Fed. Reg. 51,140 (Dep't Commerce Aug. 27, 2014), and accompanying IDM.

NONCONFIDENTIAL

Finally, with regard to the relevance of the LME data in rejecting the CRU Report, the Department upon further consideration determined that its finding that the 1050 aluminum alloy rolled product prices appear to be derived from LME prices alone is not a valid reason for rejecting the CRU Report's pricing data or the Zhongji Respondents' proposed benchmarks. <u>See Remand Redetermination</u> at 18.  Rather, the Department determined that that there are other sufficient reasons to reject the CRU 1050 aluminum alloy prices and Zhongji's proposed benchmarks derived therefrom.  <u>See Remand Redetermination</u> at 39.  In particular, the Department noted that LME prices are for primary aluminum, "a significantly different product than the aluminum sheet which the Zhongji Respondents (and Xiashun) purchased." <u>Id.</u> at 18. Given the Department's explanation, the Department need not address the issue of which particular findings regarding the LME data – (1) that these data contain only a "cash price" for primary aluminum, and (2) that this cash price pertains only to primary aluminum with a "minimum aluminum content of 99.7 percent" – provided the basis for the Department's rejection of the CRU Report as the aluminum plate/sheet benchmark.

## II.    COMMERCE'S INCLUSION OF THE 2010 CBRE REPORT FOR THE LAND BENCHMARK CALCULATION IS SUPPORTED BY SUBSTANTIAL EVIDENCE

Zhongji argues that the Department's decision to include the 2010 CBRE Report in its benchmark calculation, instead of relying on the 2016 to 2018 CBRE Reports and the Nexus Reports, was inconsistent with the <u>Remand Order</u> and not supported by substantial evidence. <u>See</u> Plaintiffs' Remand Comments at 12.  Zhongji's arguments are without merit.

As the Department explained, in identifying a land for the LTAR benchmark, the Department's long established practice, which has been acknowledged by this Court, "is to look to the year in which the land use rights were acquired from the government providing the subsidy to determine the appropriate time period for calculating the land benchmark."   <u>Remand</u>

Redetermination at 24 (citing <u>Zhaoqing New Zhongya Aluminum Co. v. United States</u>, 961 F.

Supp. 2d 1346, 1345 (Ct. Int'l Trade 2014)).   Specifically, Zhongji fails to acknowledge the

Department's explanation in its remand redetermination that:

> . . . contemporaneity is identified by Commerce's regulations with reference to the year in which the subsidy is approved, for example, when identifying a discount rate for the purposes of allocating a non-recurring subsidy (19 C.F.R. 351.524(d)(3), ". . . select a discount rate based on the data for the year in which the government agreed to provide the subsidy. . .").   Additionally, in identifying a land for LTAR benchmark, Commerce's practice is to look to the year in which the land use rights were acquired from the government providing the subsidy to determine the appropriate time period for calculating the land benchmark.

<u>Id.</u> at 24.   Here, the 2010 CBRE data were issued in 2010, and were based on 2010 data.  <u>Id.</u> at

45.   Zhongji's land-use-rights purchases took place in [                                        ] <u>Id.</u>   In

contrast, and as the Department stated, the 2016-2018 CBRE Reports and 2018 Nexus Report

were issued, and pertain to data collected [                    ] after Zhongji's land use rights were

acquired.   <u>Id.</u>   Thus, contrary to Zhongji's claims, the Department's reliance on a land

benchmark based on a report prepared in 2010 was [                                        ] for

the Chinese government's provision of land to Zhongji.   Thus, the 2010 CBRE Report is superior

to the alternative sources proposed by Zhongji and is consistent with the <u>Remand Order</u>.  <u>Id.</u>

     With regard to economic comparability, Zhongji argues that the Department relied on

"outdated data" in determining that China and Thailand are economically comparable.   <u>See</u>

Plaintiffs' Remand Comments at 16.   But as the Department explained, the data relied on in

<u>LWS from China</u> are "reasonably contemporaneous with Zhongji's land purchases and the 2010

CBRE Report data and that there is no record evidence that contradicts the Department's

reasoning in that case."   <u>Remand Redetermination</u> at 45 (citing <u>Laminated Woven Sacks from</u>

<u>the People's Republic of China: Final Affirmative Countervailing Duty Determination and Final</u>

<u>Affirmative Determination, in Part, of Critical Circumstances</u>, 73 Fed. Reg. 35,639 (Dep't Commerce June 24, 2008) and accompanying IDM at 17)).

With regard to the Department's consideration of geographical proximity, Zhongji contends that the Department failed to explain adequately why the benchmark country must be proximate to China.  <u>See</u> Plaintiffs' Remand Comments at 17.  Notably, Zhongji provided no legal support for its argument.  The Department on the other hand clearly explained the relevance of the geographical proximity factor as follows:

> . . . geographical proximity is relevant for land, as location is always a primary factor in valuation, demonstrating geographical proximity is a cardinal consideration for benchmarking land. . . .

> Therefore, because location is always a primary factor in valuation of land, and geographical proximity to China is an aspect of location, geographic proximity to China is a relevant consideration.

<u>Remand Redetermination</u> at 27, 46.

Next, Zhongji argues that the presence of Mexico and Brazil in the surrogate country list for the parallel AD proceeding is sufficient to demonstrate Mexico and Brazil's economic comparability to China based on GNI and, therefore, is directly relevant to the land benchmark in the CVD proceeding.  <u>See</u> Plaintiffs' Remand Comments at 19.  Zhongji, however, is incorrect. As the Department explained, the purpose of AD surrogate value analysis is "market pricing of portable commodities traded across borders, which are not directly comparable to land (which is not traded across borders)."  <u>Remand Determination</u> at 27.  Further, the Department noted that "while commodity prices in Mexico and Brazil may be useful for surrogate cost valuation in the AD context, this does not render land prices in those two countries, even if contemporaneous with the time period at issue (which in this case they are not), compelling for purposes of benchmarking land in China in the CVD context, given that both countries are oceans apart from China."  <u>Id.</u>  As such, there is no support for Zhongji's claim that the mere presence of Mexico

and Brazil on the surrogate country list establishes these countries as economically comparable to China.

Finally, contrary to Zhongji's contentions, the Department properly rejected the 2016-2018 CBRE and 2018 Nexus Reports because they were found to be less suitable as land benchmarks compared to the 2010 CBRE Report data.  See Remand Redetermination at 28-29. With regard to the 2016-2018 CBRE Report, the Department found that the report included rental rates on "logistics" space, whereas the 2010 CBRE Report included "industrial land" rent in Thailand.  Id.  The Department properly found the 2010 CBRE Report was more appropriate given that the land use rights in question are for land used primarily for manufacturing or general industrial applications.  Id.  Indeed, Zhongji tacitly acknowledges the validity of land use in the Department's analysis, by simply repeating its prior criticisms that the 2010 CBRE Report data is "fatally outdated" and "based on a flawed comparability analysis."  See Plaintiffs' Remand Comments at 20.  Further, the 2018 Nexus Reports were found unreliable, because it lacked any detailed information regarding the methodology used to collect the data.   See Remand Redetermination at 29.  Zhongji's contention that "the highlights on the overall economy and industrial land market overview" presented in the Nexus Reports somehow remedy the lack of methodology on price collection is unavailing.  See Plaintiffs' Remand Comments at 22 (citing Zhongji Benchmark at Exh. 14).  In contrast, as the Department stated, the Department addressed the methodology used in the 2010 CBRE Reports in other proceedings.   See Remand Redetermination at 47 (citing, e.g., LWS from China IDM at 17-18 and Comment 11).

Thus, compared to the other benchmark data sources on the record, the Department properly found the 2010 CBRE Thai land data to be an appropriate benchmark for Zhongji's land-use-rights purchases, because "the 2010 CBRE Thai land data is more contemporaneous,

better matches the type of land acquired, and is from a country which is more comparable to China in terms of level of economic development, population, and geographic proximity." Id. at 44.

## III.   <u>CONCLUSION</u>

For the reasons discussed above, Defendant-Intervenors fully support Commerce's determination to rely on the TDM data and 2010 CBRE Report data. The Department has provided adequate explanations for why its determination is reasonable, and its Remand Redetermination should therefore be affirmed in its entirety.

Respectfully submitted,

JOHN M. HERRMANN
GRACE W. KIM
KELLEY DRYE & WARREN LLP
3050 K Street, N.W., Suite 400
Washington, DC  20007
(202) 342-8400

Counsel to Defendant-Intervenors

Dated:  October 31, 2023

## CERTIFICATE OF COMPLIANCE
## WITH COURT OF INTERNATIONAL TRADE
## STANDARD CHAMBERS PROCEDURES

Pursuant to this Court's Order dated August 14, 2023 (ECF No. 70), setting the word limitation to Comments Supporting Commerce's Remand Redetermination to 10,000 words, counsel to Aluminum Association Trade Enforcement Working Group and its individual members (JW Aluminum Company, Novelis Corporation, and Reynolds Consumer Products, LLC) (collectively, "Defendant-Intervenors"), certifies that these Comments in Support of the U.S. Department of Commerce's Final Results of Redetermination Pursuant to Court Remand (Aug. 4, 2023) (Public Version), ECF Nos. 67-68 (REM C.R. 4, REM P.R.), contain 3,822 words, including footnotes.  The word count certification is made in reliance on the word-count feature contained in Microsoft Word Office 2013.

Respectfully submitted,

/s/ Grace W. Kim
JOHN M. HERRMANN
GRACE W. KIM
KELLEY DRYE & WARREN LLP
3050 K Street, NW, Suite 400
Washington, DC 20007
(202) 342-8400

Counsel to Defendant-Intervenors

Dated:  October 31, 2023